HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AXIS SURPLUS INSURANCE COMPANY, et al.,

    Plaintiffs,

v.

JAMES RIVER INSURANCE COMPANY,

    Defendant.

CASE NO. C08-1089RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment (Dkt. # 13) and a motion for leave to file an overlength brief (Dkt. # 28) from Defendant James River Insurance Company ("James River"), plus a motion (Dkt. # 16) from Plaintiffs to amend their complaint. No party has requested oral argument. For the reasons stated herein, the court DENIES James River's motions and GRANTS Plaintiffs' motion to amend.

## II. BACKGROUND

This dispute between insurance companies arises in the wake of the construction of the Regatta condominiums in Seattle's Fremont neighborhood. Village Framer's Corporation ("VFC") entered into a subcontract to provide framing work for the project. Although it is not entirely clear from the record, it appears that VFC and others completed construction at Regatta no later than the middle of 2003.

ORDER – 1

At some point, the Regatta condominium association board ("the Board") discovered various construction defects. The earliest evidence in the record regarding that discovery is an April 26, 2006 letter from the Board to the Regatta developer that included a non-exhaustive list of defects to be remedied. Rosenberg Decl. (Dkt. # 15), Ex. 8. In July 2006, the Board sued the developer in King County Superior Court. Neither VFC nor any other subcontractor was named in the complaint, but the complaint noted that the defects were due in part to the negligence of numerous unnamed subcontractors. *Id.*, Ex. 14 at ¶ 6.

On February 12, 2007, the developer filed a third-party complaint naming several subcontractors, but not VFC, as third-party defendants. Ferestien Decl. (Dkt. # 21), Ex. C. In an October 1, 2007 amended third-party complaint, VFC was named as a third-party defendant for the first time. Rosenberg Decl. (Dkt. # 15), Ex. 16.

VFC tendered a claim to two of its insurers: Plaintiffs Canal Indemnity Company ("Canal"), who insured VFC from May 2001 to May 2003; and Axis Surplus Insurance Company ("Axis"), who insured VFC from the expiration of the Canal policy until May 20, 2006. Wilkins Decl. (Dkt. # 20) ¶ 2; McElvaney Decl. (Dkt. # 19) ¶ 3, Ex. A. These insurers (whom the court will collectively refer to as "Axis/Canal") agreed to defend VFC in the lawsuit, subject to a reservation of rights. Wilkins Decl. (Dkt. # 20) ¶ 3 & Ex. A (Canal's Sept. 10, 2007 reservation of rights letter); McElvaney Decl. (Dkt. # 19) ¶¶ 5-6 & Ex. A (Axis's August 23, 2007 reservation of rights letter). VFC never tendered a claim to James River, who first insured VFC under a policy (the "Policy") that commenced on May 20, 2006. Rosenberg Decl. (Dkt. # 15), Exs. 11-13.

On August 23, 2007, an Axis representative sent a letter to James River as a "tender of defense from Axis to James River." *Id.*, Ex. 15. The letter is brief, and provides no details about the nature of the claim against VFC. *Id.* Several documents were apparently attached to the letter, *id.*, although the record is silent as to what those documents were.

ORDER – 2

On February 15, 2008, James River responded to the letter by declining to defend VFC.[1] *Id.*, Ex. 17. The letter states that James River considered the documents that Axis provided, but specifically identifies only one document on which it based its coverage determination: the April 2006 letter from the Board to the Regatta developer listing construction defects. *Id.* James River took the position that the April 2006 letter showed that whatever damage VFC was liable for had arisen prior to the inception date of the Policy. *Id.* It relied on a "Claims in Progress Exclusion" in the Policy as a basis for excluding damage that "begins or takes place" before the inception date of the Policy. *Id.* It stated that its coverage denial was based on the facts it was currently aware of, and invited Axis to forward additional information bearing on the coverage determination. *Id.*

Axis responded in a February 28, 2008 letter. The letter stated that Axis was unaware of the April 2006 letter from the Board to the Regatta developer, but stated that the construction defects at issue included framing-related problems. McElvaney Decl. (Dkt. # 19), Ex. D ("Among the[] [defects] are mis-alignment of posts that carry concentrated loads from roof and timber floors, rough openings of windows and doors not plumb level and square and missing framing hardware."). The letter said nothing about when these defects arose. *Id.* Instead, Axis took the position that James River was obligated to defend VFC until "James River can conclusively rule out the possibility that some part of the allegedly defective work of [VFC] did not result in an item of property damage that is not of the same general type or harm from others, and did not occur during the James River policy period." *Id.*

---

[1] The court acknowledges Axis/Canal's assertion that James River's nearly six-month delay in responding to its initial letter was a violation of Washington insurance regulations. Such assertions, however, would be relevant only to a claim of bad faith or a violation of the Washington Consumer Protection Act. Neither Axis/Canal's complaint nor its proposed amended complaint raises a bad faith claim. The court therefore declines to further discuss any allusion to James River's bad faith.

ORDER – 3

Having received no response from James River to the February 28 letter, McElvaney Decl. (Dkt. # 19) ¶ 11, Axis and Canal joined forces and retained counsel who wrote a May 8, 2008 letter urging James River to participate in VFC's defense. Ferestien Decl. (Dkt. # 21), Ex. A. The letter asserted essentially the same argument as the February 28 letter, but added a declaration from Scott Daiger, the owner of VFC. *Id.*, Exs. A & B. Mr. Daiger reviewed the Board's April 26, 2006 letter and declared that "[n]one of the alleged defects listed [therein] relate to the work performed by Village Framers for the Regatta condominiums construction project." *Id.*, Ex. B. He believed that the listed defects "would be attributable to work performed by other subcontractors." *Id.*

James River responded with a final letter, dated May 27, 2008, in which it reasserted its denial of coverage. Rosenberg Decl. (Dkt. # 15), Ex. 19. This time, James River recited several facts bearing on its determination. It noted that it had reviewed the Regatta developer's amended third-party complaint, and that Axis/Canal had not provided a copy of that complaint until May 23, 2008. *Id.* It noted that VFC completed its work at Regatta no later than 2002, and that the condominium units were sold to the public between June 2002 and December 2003. *Id.* It pointed out that Mr. Daiger's declaration was conspicuously silent as to the critical fact bearing on the application of the Claims in Progress Exclusion: whether VFC had performed any work that resulted in damage that began or took place after the inception of the Policy. *Id.* In James River's view, there was no evidence of any damage beyond the scope of the Claims in Progress Exclusion. James River again refused to defend VFC or contribute to defense costs.

Axis/Canal filed this lawsuit seeking a declaration that James River was obligated to participate in VFC's defense and asserting a claim of equitable contribution to recover past and future defense costs. Since then, VFC has settled the claims against it in the underlying state court lawsuits. James River now seeks summary judgment that it is not obligated to pay any of VFC's defense costs.

ORDER – 4

### III. ANALYSIS

The court's analysis of James River's summary judgment motion will begin with a determination of whether James River had a duty to defend VFC. The court will then turn to James River's argument that VFC's refusal to tender a claim to it means that Axis/Canal cannot seek recovery of defense costs, which will in turn require the court to examine Axis/Canal's motion to amend its complaint.

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in answering legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.  James River Had a Duty to Defend VFC.**

Axis/Canal is not attempting to force James River to indemnify VFC for liability in the Regatta lawsuits; it only seeks payment of James River's proportionate share of the costs of defending VFC in these lawsuits. It can succeed in this effort only if James River had a duty to defend VFC.

An insurer's duty to defend its insured is broader than its duty to indemnify. *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). Typically, the complaint in a lawsuit filed against the insured is the trigger for the duty to defend. *Id.* An insurer must examine the allegations in the complaint, construe them liberally, and determine

ORDER – 5

whether, if proven, the allegations would impose a liability on the insured that the policy would cover. *Id.*; *see also Truck Ins. Exchange v. Vanport Homes, Inc.*, 58 P.3d 276, 281-82 (Wash. 2002). Critically, at least for this dispute, *the insurer may not look beyond the complaint if the complaint conceivably alleges a covered liability*. Instead, the insurer may look beyond the complaint only if doing so would benefit the insured:

> There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured. If coverage is not clear from the face of the complaint but may exist, the insurer must investigate the claim and give the insured the benefit of the doubt in determining whether the insurer has an obligation to defend. . . . Similarly, facts outside the complaint may be considered if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate.

*Truck Ins. Exchange*, 58 P.3d at 282 (internal citations and quotations omitted); *see also Woo*, 164 P.3d at 459 ("The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend – it may do so only to trigger the duty.").

There are two relevant complaints in this matter. The first is the Regatta developer's amended third-party complaint, the sole complaint that names VFC as a party. In naming VFC as a third-party defendant, the complaint asserts that VFC "was a subcontractor on the project at issue in this case and performed construction services and/or provided materials to the project." Rosenberg Decl. (Dkt. # 15), Ex. 16 ¶ 9. It alleges that the project in question was construction of a condominium. *Id.* ¶ 19. It notes that the Regatta Board had sued the developer for "alleged defects in and resulting property damage from the construction work performed on, the materials supplied to, and the design services provided for the project by the Third Party Defendants." *Id.* ¶ 35. The complaint attributes all damage to the third-party defendants. *Id.* ¶¶ 36-37. Notably, the complaint offers no information about when any of the third-party defendants performed their work, or when the damages that the Board complained of arose.

The amended-third party complaint references the Regatta Board's suit against the Regatta developer. *Id.* ¶ 35. The complaint in that suit adds no relevant detail absent

ORDER – 6

from the third-party complaint except the allegation that the Regatta developer sold the condominium units to homeowners between June 2002 and December 2003. Rosenberg Decl. (Dkt. # 15), Ex. 14 ¶ 60. The complaint contains no information about what specific damage occurred, or when the damage complained of first arose.

Upon review of these pleadings, James River was confronted with an assertion that VFC had contributed to property damage at the Regatta condominiums. Although James River could perhaps infer that VFC's work was completed no later than the last sale of a condominium unit in 2003, there are no allegations in the complaint that would permit James River to determine when property damage first occurred at the building.

There is no dispute that the pleadings allege a loss within the general coverage provisions of the James River Policy. James River does not attempt to argue otherwise, but instead relies on two exclusions in the policy: a "Claims in Progress Exclusion" and a condominium exclusion. An insurer seeking to rely on a policy exclusion bears the burden of proving that the exclusion applies. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 127 (Wash. 2000). Only where an exclusion "clearly and unambiguously applies to bar coverage" can the insurer decline to defend its insured. *Hayden v. Mutual of Enumclaw Ins. Co.*, 1 P.3d 1167, 1172 (Wash. 2000).

Before turning to the two Policy exclusions, the court recites several relevant principles of insurance policy interpretation. In Washington, insurance policy interpretation is a purely legal question. *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002). The court must give the terms of the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id*. (internal quotation omitted). Terms defined within a policy are to be construed as defined, while undefined terms are given their ordinary meaning. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). If policy language on its face is fairly susceptible to two different but reasonable interpretations, ambiguity exists, and the court will apply the interpretation most favorable to the insured. *Allstate Ins. Co.*

ORDER – 7

*v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997) (cited in *Petersen-Gonzales v. Garcia*, 86 P.3d 210 (2004)); *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible."). Absent evidence that the parties negotiated the terms of the insurance policy, a court must construe ambiguity against the insurer "even where the insurer may have intended another meaning." *Allstate*, 865 P.2d at 562.

### 1. The Claims in Progress Exclusion

The first of the exclusions on which James River relies, the Claims in Progress Exclusion, provides as follows:

> (a) This policy does not apply to . . . "property damage" which begins or takes place before the inception date of coverage, whether such . . . "property damage" is known to an insured, even though the nature and extent of such damage or injury may change and even though the damage may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such . . . "property damage" may be or may involve a continuous or repeated exposure to substantially the same general harm.
>
> (b) All "property damage" to units of or within a single project or development, and arising from the same general type of harm, shall be deemed to occur at the time of damage to the first such unit . . . .

Rosenberg Decl. (Dkt. # 15), Ex. 12. Neither party raises any dispute about the meaning of this exclusion. The court focuses on its first clause, which unambiguously excludes coverage for property damage that "begins or takes place" before the inception date of the coverage. No one argues that this clause is difficult to interpret.[2] Moreover, the exclusion clarifies that for property damage occurring in multi-unit projects, property damage begins when it begins in the first unit, even if damage "arising from the same general type of harm" later manifests in other units.

---

[2] James River argues that Axis/Canal interprets the exclusion to permit people who "know[] they are being sued" to buy a policy containing the exclusion and force the insurer to defend it. Def.'s Reply (Dkt. # 25) at 7. The court finds no indication that Axis/Canal seeks that interpretation. Even if VFC knew that lawsuits would arise out of the Regatta project when it bought the Policy, there is no evidence that VFC knew that it would be sued for damage that fell within the scope of the Claims in Progress Exclusion. If James River desired a policy that excluded liability for future damage arising out of past work, it should have drafted its exclusion differently.

ORDER – 8

Relying solely on the two complaints in the underlying lawsuit, James River could not rule out the possibility that VFC caused damage that was beyond the scope of the Claims in Progress Exclusion. As the court noted, the pleadings give no information about when any property damage began or took place at the Regatta condominiums. At best, James River could have inferred that VFC completed its work at Regatta before the inception of its Policy, but this is insufficient, as its policy focuses on when the damage "begins or takes place." Rosenberg Decl. (Dkt. # 15), Ex. 12; *see also Wellbrook v. Assurance Co. of Am.*, 951 P.2d 367, 371 (Wash. Ct. App. 1998) ("[A]n 'occurrence' for insurance coverage purposes is determined by reference to the time the aggrieved party sustains an injury, not the time the initial negligence or damage occurred."). Absent time-specific allegations, it was conceivable that VFC caused damage that began or took place after the inception of the James River Policy. *Woo*, 164 P.3d at 459 ("[T]he duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint.") (emphasis in original); *Truck Ins. Exchange*, 58 P.3d at 282 ("Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend."). The liability alleged in the complaint was therefore not unambiguously within the scope of the exclusion.

James River erred because it did not base its application of the Claims in Progress Exclusion solely on the pleadings in the underlying lawsuit. Instead, it relied on the Regatta Board's April 26, 2006 letter that described a series of defects and damage at the building. James River erred by relying on evidence outside the complaints to avoid its duty to defend.[3] The complaints themselves described liability that was at least potentially outside the scope of the Claims in Progress Exclusion, and thus triggered

---

[3] The April 26 letter does not unambiguously establish that the Claims in Progress Exclusion applies. It merely establishes that some defects and damages had manifest as of the date of the letter. Rosenberg Decl. (Dkt. # 15), Ex. 8. None of those damages are, at least on their face, the result of framing work, much less framing work that VFC performed. The letter does not rule out the possibility that framing-related damages began later, after the inception date of the Policy. Thus, even if James River could properly look beyond the complaint, the April 26 letter is not a sufficient basis to avoid its duty to defend.

ORDER – 9

James River's duty to defend. *Am. Best Food, Inc. v. Alea London, Ltd.*, 158 P.3d 119, 125 (Wash. Ct. App. 2007) ("Any ambiguity in the complaint against the insured is liberally construed in favor of triggering the insurer's duty to defend."). The court acknowledges that it was unlikely that the James River Policy would ultimately require it to indemnify VFC, but as this court and many courts before it have noted, the duty to defend is broader than the duty to indemnify. If James River wished to cut off its duty to defend by invoking facts outside the pleadings in the underlying lawsuits, it was obligated to provide a defense under a reservation of rights and file a declaratory judgment action against VFC. *Truck Ins. Exchange*, 58 P.3d at 282. When James River declined to follow this procedure, it did so at its own peril. *Woo*, 164 P.3d at 460 (noting that an insured spares itself expense by defending "under a reservation of rights and seeking a declaratory judgment").

### 2. The Condominium Exclusion

James River fares no better by invoking the Policy's condominium exclusion. James River contends that this exclusion applies to any work performed on a condominium, but that broad assertion finds no support in the language of the exclusion:

> This insurance does not apply to . . . "property damage" . . . arising out of "your work" or "your product" related to any construction, reconstruction, rebuilding, restoration, renovation, remodeling, repair, upgrading, improvement, refurbishing or development of any "condominium(s)" of any description *when "your work" is performed for or "your product" is provided to the condominium owner's board of directors, managers, agents, representatives or associations.*

Rosenberg Decl. (Dkt. # 15), Ex. 13 (emphasis added).

In interpreting the italicized clause, the court begins by noting that it limits the exclusion so that it does not apply to all work performed on a condominium – defeating James River's proposed construction. To conclude otherwise would render the italicized clause mere surplusage, and the court is not at liberty to do so. *Summers v. Great Southern Life Ins. Co.*, 122 P.3d 195, 197 (Wash. Ct. App. 2005) (noting that a court

ORDER – 10

must "give meaning to every term in a policy provision"); *Allstate Ins. Co. v. Huston*, 94 P.3d 358, 364 & n.29 (Wash. Ct. App. 2004).

Under at least one reasonable construction of the italicized clause, VFC did not perform work for any of the designated persons or entities. The question is whether VFC's work (which the pleadings allege it performed for the project's general contractor, who contracted with the Regatta developer) is work it performed for "the condominium owner's board of directors, managers, agents, representatives or associations." In answering that question, the court looks to the Washington Condominium Act, because the exclusion uses the language of the Act. For example, when the exclusion defines "Condominium(s)," it uses the Act's definition. *Compare* Rosenberg Decl. (Dkt. # 15), Ex. 13 *with* RCW 64.34.020(9). Other words and phrases used in the exclusion are also defined in the Condominium Act. *See* RCW 64.34.020(4) (defining "Association" and "unit owners' association"), RCW 64.34.020(5) (defining "Board of directors"). Under the Act, the Regatta developer is the condominium "declarant," the owner of the property that becomes a condominium after compliance with the Act. RCW 64.34.020(14). Because James River used the Condominium Act's language when drafting the exclusion, the court expects that it would have explicitly excluded work performed for a condominium declarant if it intended to do so.[4] A declarant can be a "unit owner," RCW 64.34.020(39), but the exclusion does not apply to work performed for unit owners or condominium owners, but rather solely to their "board of directors, managers, agents, representatives, or associations." In short, James River drafted a condominium exclusion that is (at a minimum) ambiguous as to whether it excludes original construction work performed for a condominium developer.

---

[4] James River attempts to take refuge in extrinsic evidence by pointing out that VFC's insurance broker stated in its request for a premium quote that VFC would no longer work on condominium projects. Def.'s Mot. (Dkt. # 13) at 12; Rosenberg Decl. (Dkt. # 15), Ex. 9. Although a court can consider "extrinsic evidence of the intent of the parties" in certain circumstances, *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005), this evidence does not show the parties' intent to exclude *past* condominium work. It merely shows that, going forward, VFC's represented that it would not work on condominium projects.

ORDER – 11

1    VFC's work for the Regatta developer falls outside the scope of a reasonable
2    construction of the Policy's condominium exclusion. There may be other constructions
3    of the exclusion, perhaps constructions that favor James River. At best, however, this
4    makes the exclusion ambiguous.[5] Policy ambiguities, particularly exclusion ambiguities,
5    are construed against the insurer. *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v.
6    Allstate Ins. Co.*, 26 P.3d 910, 916 (Wash. 2001).

    For the reasons stated above, the court concludes that neither the Claims in Progress Exclusion nor the condominium exclusion gave James River a basis to refuse to defend VFC.

### B. VFC's Failure to Tender Does Not Strip Axis/Canal of a Claim Against James River or Standing to Bring that Claim.

Having determined that James River owed VFC a duty to defend, the court turns to James River's efforts to prevent Axis/Canal from recovering defense costs in VFC's stead. VFC never tendered a claim to James River. Axis alone tendered a claim to James River, and never expressly stated that it was doing so on VFC's behalf. McElvaney Decl. (Dkt. # 19), Ex. B ("Please accept this letter as a tender of defense from Axis to James River."). When Axis/Canal sued, it asserted only two claims: one for equitable contribution, and one for declaratory judgment that James River owed a duty to defend.

James River contends that both of Axis/Canal's original claims fail as a matter of law for two reasons. First, it argues that Axis/Canal cannot claim equitable contribution because VFC never tendered a claim to James River. Equitable contribution permits "an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss." *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 872 (Wash. 2008). An insurer has no duty to defend, however, until its insured

---

[5] Before this litigation, James River apparently shared the court's view that the application of the condominium exclusion was uncertain at best. In its final denial letter to Axis/Canal, it stated that "Because James River's knowledge of the facts giving rise to the Third Party Complaint is limited to the pleadings, it is unclear whether this limiting endorsement also applies." Rosenberg Decl. (Dkt. # 15), Ex. 19.

ORDER – 12

tenders a claim. *Id.* at 873. Here, James River contends that VFC never tendered a claim to it, and thus Axis/Canal has no right to seek equitable contribution for defense costs. *See id.* ("[I]f the insured has not tendered a claim to an insurer prior to settlement or the end of trial, other insurers cannot recover in equitable contribution against that insurer.").[6] Second, James River contends that Axis/Canal lacks standing to seek a declaratory judgment because only VFC can seek a declaration that James River owed it a duty to defend.

Axis/Canal's answer to both of James River's arguments is that VFC automatically transferred its rights under the James River policy to Axis/Canal. It relies on a subrogation clause included in both the Axis and Canal policies:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Pltf.'s Prop. Amend. Compl. (Dkt. # 16-2) at ¶ 9. According to Axis/Canal, the clause means that it held VFC's policy rights, and thus Axis's tender of a defense in its August 23, 2007 letter to James River was sufficient to serve as a tender on VFC's behalf. Similarly, Axis/Canal contends that the automatic acquisition of VFC's rights under the James River Policy gives it standing to seek declaratory judgment.

As James River points out, however, it is not obvious that the subrogation clause *automatically* transferred VFC's rights to Axis/Canal. The first sentence of the clause suggests that an insured's rights under other insurance policies "are transferred to [Axis/Canal]" without any action on the insured's part. The third sentence, by contrast, requires the insured to "transfer those rights to [Axis/Canal]" upon Axis/Canal's request. This requirement would be superfluous if the insured's rights transfer automatically.

---

[6] The parties frequently refer to the principles expressed in *Mutual of Enumclaw* as the "selective tender rule." The court notes that the *Mutual of Enumclaw* court did not adopt the "selective tender rule," but merely noted that the rule it adopted "is largely consistent" with the version of the "'selective tender' rule" that the trial court applied. 191 P.3d at 873.

ORDER – 13

Ultimately, the court need not determine whether VFC's James River Policy rights transferred to Axis/Canal automatically. Axis/Canal has taken two actions that, if the court allows them, would make that determination irrelevant. First, Axis/Canal has obtained a formal assignment[7] of rights from VFC. Ferestien Decl. (Dkt. # 30), Ex. B. Second, it has filed an amended complaint asserting subrogation and breach of contract claims that avoid the limitations of an equitable contribution claim.

If the court allows Axis/Canal to rely on its formal assignment and amended complaint, the legal obstacles (if any, see *supra* n.5) to recovering defense costs from James River disappear. As the insurer in *Mutual of Enumclaw* discovered, an insurer has many options other than an equitable contribution claim for recovering defense costs from a recalcitrant co-insurer. Where the insured has assigned his policy rights to an insurer, the insurer can pursue a "conventional subrogation" claim by offering a late tender of a claim in the insured's stead. *Mutual of Enumclaw*, 191 P.3d at 875. With no assignment (either by contract or by operation of law), one insurer cannot tender to another on behalf of a mutual insured. *Id.* at 874-75. After assignment, however, the first insurer steps into the insured's shoes, acquiring his rights, including his right to tender to other insurers. *Id.* In addition, Axis/Canal has asserted the "late tender rule," which permits an insured (or one in the shoes of an insured) to give an insurer late notice of a claim. *Id.* at 875. Unless the insurer can prove that "late notice actually and substantially prejudiced it," late tender is sufficient to require the insurer to honor its policy. *Id.*

James River does not dispute that the formal assignment and the subrogation claims provide a route for Axis/Canal to recover James River's share of defense costs, nor could it. The assignment gives Axis/Canal the right to assert a claim for declaratory judgment in VFC's stead; James River does not argue otherwise. And although James

---

[7] The court notes that Axis's tender of a defense to James River (or other pre-litigation events) may have been sufficient to serve as a tender from VFC to James River. VFC's formal assignment of rights may be superfluous.

ORDER – 14

River retains the right to provide evidence that a late tender actually and substantially prejudiced it, it has not argued that the timing of Axis/Canal's tender prejudiced it as a matter of law, perhaps because it had as much notice of VFC's complaint as Axis/Canal.

Instead, James River asks the court to deny Axis/Canal's motion for leave to amend and refuse to consider the formal assignment. Rule 15 of the Federal Rules of Civil Procedure directs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court has "broad discretion" to decide if granting leave to amend serves the ends of justice. *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). The court should consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067 (9th Cir. 2004). In this case, every factor mitigates in favor of granting leave to amend.

James River's assertion of undue delay is unconvincing. When Axis/Canal sued, the Washington Supreme Court had yet to decide *Mutual of Enumclaw*, and there was thus no obvious defect in Axis/Canal's equitable contribution claim. Axis/Canal moved to amend in November 2008, just over two months after the *Mutual of Enumclaw* decision. The relief that Axis/Canal first sought – compensation for defense costs – is the same as the relief it seeks in its amended complaint, it has merely asserted alternate routes to that relief. Axis/Canal moved to amend almost two months prior to the court's January 21, 2009 deadline for amending pleadings. Dkt. # 12 (Sept. 26, 2008 scheduling order). Trial will not commence until July 2009. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1035 (9th Cir. 2008) (reversing dismissal without leave to amend where "[t]rial was not fast approaching"). Indeed, James River's sole argument for undue delay is that Axis/Canal did not move to amend until James River filed a summary judgment motion. This makes little difference, for the reasons stated above.

ORDER – 15

Although the court can imagine circumstances where seeking to amend in the wake of a summary judgment motion would be dilatory, this case presents none of them.[8]

James River has no viable basis to assert undue prejudice, because Axis/Canal's amended complaint seeks nothing other than the defense costs it has claimed since at least August 2007. There is no evidence that the amended complaint will expand the scope of discovery or otherwise delay the trial. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (finding no prejudice where amendment "caused no delay in the proceedings and required no additional discovery"). Where a party seeks to add an otherwise viable cause of action by amendment, there is no prejudice unless the delay in amending was for the purpose causing the opposing party to incur additional litigation expense. *Id.* at 713.

The remaining three factors also weigh in favor of granting leave to amend. There is no evidence that Axis/Canal acted in bad faith. Indeed, it has acted consistently since the day Axis learned of VFC's potential liability to convince James River to share in defense costs. Similarly unavailing is James River's contention that leave to amend is futile. As the court has discussed, each of Axis/Canal's new causes of action has merit. Finally, the court notes that Axis/Canal has not previously amended its complaint. The court will permit Axis/Canal to file its amended complaint.

The court also rejects James River's request to strike VFC's formal assignment. It is unfortunate that Axis/Canal did not obtain the assignment until it filed its reply in support of its motion to amend. This is not, however, a basis for excluding it. As the court has noted, even at this late juncture, Axis/Canal is permitted to obtain an assignment of VFC's rights and tender a claim to James River. The court could engage in the hypertechnical process of refusing to consider the assignment and forcing

---

[8] James River cited dozens of cases that allegedly support its contention that a court should not allow an amended complaint after a summary judgment motion. Def.'s Opp'n (Dkt. # 22) at 4 n.2. James River did not discuss the circumstances underlying any of the cited cases. Such unexplained citations are of little assistance to the court.

ORDER – 16

Axis/Canal to file a new case based on the assignment. That would serve no purpose, however, but to multiply judicial proceedings, increase costs to the parties, and delay resolution of this dispute. *See* Fed R. Civ. P. 15(d) (permitting court to supplement pleadings to consider "any transaction, occurrence, or event that happened after the date of the original pleading"); *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (noting court's "broad discretion" under Rule 15(d) and duty to use it to promote "judicial economy and convenience"). The court will not strike the assignment.

### C. The Court Denies the Parties' Miscellaneous Requests.

In its opposition to James River's summary judgment motion, Axis/Canal raised a host of evidentiary objections. Because Axis/Canal prevailed in its opposition, the court declines to address the objections. The court notes, however, that such evidentiary objections are a dubious strategy. There is absolutely no indication that Axis/Canal had any legitimate doubts about the authenticity of the evidence in question, or James River's ability to provide a witness to testify about them. Nonetheless, Axis/Canal objected to James River's failure to authenticate the evidence or to provide a declarant with personal knowledge of the facts necessary to overcome hearsay objections to the evidence. Such objections are appropriate where there are serious questions as to whether the documents are authentic, or whether the opposing party would be able to produce a witness with the knowledge necessary to rely on the document at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (noting that court may consider hearsay evidence on summary judgment if it "could be presented in an admissible form at trial"). There is no indication that Axis/Canal had any genuine doubt about the ultimate admissibility of the evidence to which it objected. The court has a busy caseload, and resources spent addressing dubious evidentiary objections are resources that must be diverted from other cases and other parties. The court strongly advises counsel for Axis/Canal to reconsider the practice of raising such objections.

ORDER – 17

| | |
|---|---|
| 1 | The court also denies James River's motion to file an overlength reply brief in support of its summary judgment motion. As James River admits, the motion was untimely. *See* Local Rules W.D. Wash. CR 7(f)(1). It was also unnecessary, as the court finds no merit in James River's assertion that it could not have edited a single page from its reply brief. The court declines to rely upon the overlength portion of James River's reply brief, although it notes that the outcome of the summary judgment motion would not have changed had the court considered the brief in its entirety. |

## IV. CONCLUSION

For the reasons stated above, the court DENIES James River's motion for summary judgment (Dkt. # 13), GRANTS Axis/Canal's motion for leave to amend (Dkt. # 16), and DENIES James River's untimely motion to file an overlength reply brief (Dkt. # 28). Axis/Canal may file its amended complaint.

DATED this 13th day of March, 2009.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 18