HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AXIS SURPLUS INSURANCE COMPANY, et al.,

    Plaintiffs,

    v.

JAMES RIVER INSURANCE COMPANY,

    Defendant.

CASE NO. C08-1089RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment. Dkt. ## 42, 44. Defendant James River Insurance Company ("James River") requested oral argument on its motion for summary judgment. No party has otherwise requested oral argument. The court finds these motions suitable for disposition on the basis of the parties' written material. For the reasons stated herein, the court DENIES James River's motion (Dkt. # 42), GRANTS Plaintiffs' motion in part and DENIES it in part, and directs the parties to take additional steps as described at the conclusion of this order.

## II. BACKGROUND

The court has already examined this dispute in its March 13 order (Dkt. # 37) denying James River's first motion for summary judgment, and granting Plaintiffs leave to file an amended complaint. The court repeats its discussion from that order only to the extent necessary to address the parties' remaining disputes.

ORDER – 1

Plaintiffs Canal Indemnity Company ("Canal") and Axis Surplus Insurance Company ("Axis"), who the court will sometimes refer to collectively as "Axis/Canal," insured Village Framer's Corporation ("VFC") under a series of general liability insurance policies from May 2001 to May 2006. Ferestien Decl. (Dkt. # 17), Exs. B-C (excerpts from Axis and Canal policies). James River issued VFC a general liability insurance policy (the "Policy") commencing in May 2006.

VFC provided framing services as a subcontractor at the Regatta condominium project in Seattle. Although the record is less than clear, it appears that construction at Regatta ended no later than mid-2003. Regatta's condominium board began complaining of construction defects at some point. In July 2007, the general contractor for the Regatta project notified Canal of a pending suit against it, noted that some of the damages claimed in the suit at least arguably arose from VFC's work, and requested that Canal provide a defense. Wilkinson Decl. (Dkt. # 49), Ex. A. Canal agreed to provide a defense, and also notified Axis of the dispute. Axis also agreed to provide a defense. *Id.*, Ex. B.

James River refused to provide a defense. Axis notified James River of VFC's potential liability in August 2007, before VFC had even been formally named in a complaint in the underlying litigation. Rosenberg Decl. (Dkt. # 15), Ex. 15. As the court has noted, the August 2007 letter purports to have enclosed all documents Axis had received in connection with the claim, but the record does not reflect what those documents were. *Id.* Nonetheless, it is undisputed that as of August 2007, James River had notice of VFC's potential liability. By February 2008, James River admitted that it had examined the claim against VFC. Rosenberg Decl. (Dkt. # 15), Ex. 17. There is no indication that James River communicated with VFC, but it nonetheless took the position that various Policy exclusions meant it owed no duty to defend. *Id.* Axis responded the same month, urging James River to reconsider, and providing additional detail about VFC's basis for coverage. McElvaney Decl. (Dkt. # 19), Ex. D. When James River did

ORDER – 2

not respond, Axis/Canal's counsel wrote again in May 2008, this time providing a declaration from Scott Daigher, the owner of VFC, about the basis for coverage. Ferestien Decl. (Dkt. # 21), Ex. A. James River denied coverage a final time later that month, this time expressly admitting that it had reviewed the third-party complaint that named VFC. Rosenberg Decl. (Dkt. # 15), Ex. 19. Axis and Canal sued James River in June 2008. The court will revisit the communications amongst the parties in its later analysis, but it suffices for now to note that James River had ample opportunity to participate in VFC's defense and the settlement of claims against VFC.

With Axis and Canal paying for its defense, VFC settled claims against it in the Regatta lawsuit in September 2008. The record does not reveal what VFC paid in the settlement. Axis and Canal assert, however, that VFC's defense in the Regatta lawsuit cost just under $170,000. They seek to force James River to pay one third of those costs. Axis and Canal seek only reimbursement for defense costs; they do not ask James River to pay any portion of the settlement of VFC's liability in the underlying litigation.

Although the court will revisit this issue in greater detail in its later analysis, the court notes that there is little evidence that VFC took any role in requesting coverage from any of its insurers. There is no evidence that VFC directly requested coverage from Axis, Canal, or James River. There is no evidence, moreover, that James River communicated with VFC upon receiving notice of the claim against VFC in August 2007, or at any time thereafter.

In the March 13 order, the court determined that James River had a duty to defend VFC. It rejected James River's attempts to rely on various exclusions in the Policy to avoid its duty. It also considered, however, whether the circumstances of the case were such that James River's duty to defend was never triggered. The court noted the possibility that subrogation clauses in the Axis and Canal policies automatically entitled them to assert VFC's rights under the James River Policy. Dkt. # 37 at 13-14. It also noted that "Axis's tender of a defense to James River (or other pre-litigation events) may

ORDER – 3

have been sufficient to serve as a tender from VFC to James River." *Id.* at 14 n.7. Ultimately, however, the court had no need to decide either of those issues, because VFC had formally assigned its policy rights to Axis/Canal in December 2008. The Washington Supreme Court's decision in *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 872 (Wash. 2008) established that the formal assignment gave Axis/Canal the right to bring subrogation and breach of contract claims against James River. The court granted Axis/Canal leave to amend their complaint accordingly. They filed their amended complaint in March of this year.

Axis/Canal seek summary judgment entitling them to payment of one-third of their defense costs. James River argues that it is entitled to summary judgment on a variety of grounds.

### III. ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in answering legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

The court turns first to James River's motion. Broadly speaking, it asserts two bases for avoiding its share of VFC's defense costs: that alleged breaches of various provisions of the Policy mean that Axis and Canal cannot recover, and that an "Other

ORDER – 4

Insurance" clause in the Policy makes it excess over the Axis and Canal policies. The court addresses these contentions in turn.

**A.  VFC's Alleged Breaches of the Policy are No Basis for James River to Avoid Its Share of Defense Costs.**

James River alleges that VFC, Axis, and Canal breached several provisions of the Policy. The Policy required VFC to "see to it that [James River is] notified as soon as practicable" of an event that may give rise to a claim. Rosenberg Decl. (Dkt. # 15), Ex. 11 (Policy at 10). In the event of a lawsuit, VFC was obligated to "see to it" that James River received "written notice" of the suit "as soon as practicable." *Id.* (Policy at 11). The insured must also provide copies of legal papers, cooperate with any James River investigation of the claim, and assist James River in any defense or effort to seek indemnity from other parties. *Id.* The Policy prohibits an insured from making any voluntary payment to resolve the claim. *Id.* Finally, the Policy requires "full compliance with all of the terms of this policy" before anyone can bring an action against James River. Rosenberg Decl. (Dkt. # 43), Ex. 1 (Common Policy Conditions at 1). In James River's view, VFC failed to provide notice of either the possibility of liability or the lawsuit, and improperly made voluntary payments for its own defense in the lawsuit. It settled the lawsuit without James River's consent. Then, it transferred its rights under the Policy to Axis and Canal, who not only inherited VFC's breaches by virtue of the assignment, they further breached the Policy by not "tendering" a claim after the assignment and by initiating this litigation without fully complying with the Policy.

**1.  James River Has Failed to Show Prejudice Arising from Any Alleged Breaches of the Policy.**

The clauses on which James River relies are standard features in virtually all liability insurance policies. Provisions that govern the insured's duty to provide notice of potentially covered claims or suits are broadly referred to as "tender" obligations. Along with the duty to tender, most policies also require the insured to cooperate in

ORDER – 5

investigations, bar settlement or other voluntary payments without the insurer's consent, and require compliance with the policy before the insurer can be sued.

Critically for purposes of this dispute, courts have repeatedly held that an insured's breach of the duty to tender, to cooperate, or to refrain from voluntary payments, or to comply fully with a policy before suing its insurer, is no basis for denying coverage, unless the insurer can prove actual and substantial prejudice arising from the breach. This basic principle of Washington insurance law should come as no surprise to James River, because the court cited numerous cases reiterating the principle in its March 13 order. *Mutual of Enumclaw* exemplifies that rule with respect to tender clauses:

> [E]ven where an insured breaches a "prompt notice" provision of an insurance policy, the insurer is not relieved of its duties under the insurance contract unless it can show that the late notice caused it actual and substantial prejudice.

191 P.3d at 876. In *Oregon Auto. Ins. Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975), the court required the insurer to show prejudice before relying on the breach of a clause requiring the insured to cooperate with the insurer in adjusting losses. In *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 783 (Wash. Ct. App. 2001), the court held that breach of a "voluntary payment provision" in a policy similarly required the insurer to prove prejudice.[1] In *Public Util. Dist. No. 1 ("PUD") v. Int'l Ins. Co.*, 881 P.2d 1020, 1029 (Wash. 1994), the court required an insurer to show prejudice before relying on the breach of a clause requiring the insured's consent before settlement of a claim. Similarly, the breach of a "no action" clause that requires the insured to have "fully complied" with the policy before suing its insurer is no basis to avoid liability unless the insurer can prove prejudice. *Id.* at 1028-29.

---

[1] The court cited *Griffin* in its March 13 order. James River's choice to cite *Faust v. Travelers*, 55 F.3d 471 (9th Cir. 1995), for the proposition that a breach of a voluntary payment provision does not require proof of prejudice is questionable at best and deliberately misleading at worst. The *Faust* court applied *California* law. *Id.* at 472. *Griffin* controls in this case.

ORDER – 6

The court need not decide whether VFC breached any provision of the policy. Instead, the court assumes for purposes of this motion that VFC did not provide prompt notice of the claim against it, and that it settled the claim against it and voluntarily expended defense costs before tender and without James River's consent. Moreover, the court assumes that Axis and Canal failed to properly tender a claim and that no one "fully complied" with the Policy before suing James River. Even under these generous assumptions,[2] James River has no evidence of prejudice.

James River offers no evidence of prejudice. Despite unambiguous Washington authority establishing, as to *every* clause on which James River relies, that the insured's breach is meaningless unless the insurer can show prejudice, James River scarcely mentions prejudice in the four briefs it filed in connection with these cross-motions. It cites no evidence of prejudice. Its intimations of prejudice are vague or nonsensical. It asserts that had "VFC tendered rather than just Axis and Canal, it would have triggered additional considerations." Def.'s Opp'n (Dkt. # 42) at 16. What additional considerations? James River never explains. It complains that VFC settled the lawsuit without its input, but fails to explain how this has any relevance. No one has asked James River to pay any part of the settlement of the underlying lawsuit. Axis and Canal only seek defense costs. Finally, James River asserts that allowing Axis and Canal to recover would "strip" it of "legitimate defenses" and force it to "face an unforeseeable combination of claims . . . ." *Id.* at 16. James River does not explain what legitimate defense has been "stripped," and the court is not aware of one. The evidence shows

---

[2] VFC may not have breached any provision of the Policy. James River's insistence that Axis's notices did not suffice to discharge VFC's tender obligations squares awkwardly with the Policy itself, which merely requires the insured to "see to it" that James River receives notice. Rosenberg Decl. (Dkt. # 15), Ex. 11 (Policy at 10-11). There is no reason, on the record before the court, to find that this requires an affirmative act on VFC's part. To find that VFC breached its obligations, the court would have to rule that despite receiving ample notice of a claim against VFC, James River was permitted to refuse to engage in any further inquiry with VFC about its intent to seek coverage under the Policy. The court finds it highly unlikely that the law permits an insurer to stick its head in the sand upon receipt of notice from a third-party that its insured has a potentially covered claim. Finally, as to VFC's supposed breach of the voluntary payment clause, the court notes that VFC itself made no payments. Axis and Canal paid for its defense.

ORDER – 7

beyond dispute that James River had ample notice of the claims against VFC. It knew at least some details about those claims in August 2007, and unquestionably had full knowledge of the underlying litigation no later than May 2008. It had ample opportunity to participate in VFC's defense, but it made an ill-advised choice not to. If it could not foresee that its choice to refuse to provide a defense would lead to a lawsuit, it can only point to its poor judgment. James River has suffered no prejudice as a matter of law. The liability that it faces now is the result of its own choices, not the result of any act by VFC, Axis, or Canal.

### 2. Neither VFC Nor Axis Nor Canal Was Required to "Tender" to James River.

Before turning away from allegations that Policy breaches cut off James River's liability, the court further addresses James River's insistence that the alleged failure to "tender" is significant. James River repeatedly observes that VFC never tendered a claim to it, and that Axis and Canal did not "tender" after VFC assigned them its policy rights. The court places "tender" in quotes because James River places great reliance on the word. This is itself curious, because its Policy never uses the word. Instead, as the court has already discussed, the Policy requires that James River receive appropriate notice of claims against its insured. The term "tender" refers broadly to whatever notice obligation an insured bears under an insurance policy.

Tender was important in the court's March 13 order, because James River was attacking Axis/Canal's claim for equitable contribution. In *Mutual of Enumclaw*, the court ruled that an equitable contribution claim by one co-insurer against another cannot arise until after an insured has tendered a claim to the co-insurer from whom contribution is sought. 191 P.3d at 874. That court also ruled, however, that once an insured has assigned claims to an insurer, a contractual subrogation claim will succeed where an equitable contribution claim would not. *Id.* at 874-75. It was the latter holding, coupled with Axis/Canal's desire to amend their complaint to assert a subrogation claim after

ORDER – 8

obtaining an assignment from VFC, that animated this court's disposition in the March 13 order.

This court had no occasion in the March 13 order to inquire into whether Axis's notices to VFC sufficed to fulfill VFC's obligations under the Policy. The court noted as much in the March 13 order, and has done so again today. *E.g.*, Dkt. # 37 at 14 n.7; *supra* n.2. The court also had no occasion to consider what role "tender" plays in triggering a duty to defend. James River points repeatedly to the *Mutual of Enumclaw* court's statement that "breach of the duty to defend cannot occur before tender." 191 P.3d at 873 (quoting *Griffin*, 29 P.3d at 782). The *Mutual of Enumclaw* decision reveals, however, that absent the insurer's proof of prejudice, tender is unnecessary in a subrogation claim based on a breach of the duty to defend.

In *Mutual of Enumclaw*, the insured intentionally chose not to seek coverage from USF, one of its insurers.[3] 191 P.3d at 871. It tendered its claim to other insurers, who agreed in January 2002 to fund a settlement. *Id.* In connection with the settlement, the insurer assigned its rights against any other insurers to the insurers who funded the settlement. *Id.* Only after this assignment did the settling insurers discover the USF policy. *Id.* In February 2004, more than two years after the settlement of the underlying litigation, they requested reimbursement from USF for the first time. *Id.* This was "the first time that USF had any notice of the claim" against its insured. *Id.* Even though USF had no notice of the claim until two years after the settlement of its insured's claim, the court found that the "late tender" rule permitted other insurers to bring subrogation claims. *Id.* at 876. Importantly, there was no evidence that anyone did anything that could be considered "tender" of a claim until two years after the settlement. Nonetheless, a subrogation claim was permissible unless USF could prove prejudice. *Id.* In this sense,

---

[3] It was the insured's intentional choice not to tender to a particular insurer that gave meaning to the *Mutual of Enumclaw* court's discussion of "selective tender." *E.g.*, 191 P.3d at 874 (reaching holding "because [the insured] *chose* not to tender to USF") (emphasis added). Here, there is no evidence that VFC chose not to tender. At most, it was a passive insured.

ORDER – 9

the "late tender" rule is perhaps more aptly referred to as the "no tender" rule. *Mutual of Enumclaw* demonstrates that, absent proof of prejudice, an assignee insurer need do nothing more than pursue its subrogation claim against a co-insurer to satisfy the "tender" obligations of the Policy.

James River's cries that no one has "tendered" in this case ring decidedly hollow. Where James River undisputedly had notice of the claim against VFC well in advance of settlement, *Mutual of Enumclaw* applies with even greater clarity. No alleged failure to tender bars Axis/Canal's subrogation claim.

**B.    The "Other Insurance" Clause in the Policy Does Not Help James River Avoid Its Duty to Defend.**

James River also relies on an "Other Insurance" clause in the Policy to avoid paying its share of defense costs. The clause provides in relevant part as follows:

b. Excess Insurance

This insurance is excess over:

(1) Any … other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

Rosenberg Decl. (Dkt. # 15), Ex. 11 (Policy at 11). When the Policy is excess, James River has no duty to defend unless no other insurer defends. *Id.* (Policy at 12). James River contends that the Policy is excess over the Axis and Canal policies, and that it has no duty to pay for James River's defense costs.

In order to invoke the Other Insurance clause, however, James River must show that either the Axis or Canal policies are "Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage" for VFC's work. James River has not done so. Both the Axis and Canal policies are commercial liability policies, just like the James River Policy. Commercial liability policies are plainly not within the ambit of the Other

ORDER – 10

Insurance clause.[4] If they were, the Policy (which expressly refers to itself as a "General Commercial Liability" policy) would simply express that it is excess over any other General Commercial Liability policy. That the Policy contains no such provision conclusively demonstrates that commercial liability policies are neither the capitalized types of policies listed in the Other Insurance clause nor "similar coverage." Because the court concludes that the Other Insurance clause does not apply in this action, it need not reach Axis/Canal's argument that James River should be estopped from asserting the clause because it did not do so when it initially refused to defend VFC.

For the reasons stated above, the court concludes that James River breached its duty to defend VFC, and that it owes defense costs to Axis and Canal. Axis and Canal have breach of contract and subrogation claims that provide a vehicle to recover those costs, as the *Mutual of Enumclaw* decision amply demonstrates. The court need not decide whether Axis and Canal might be able to prevail on an equitable contribution claim as well, given that there is no evidence that VFC intentionally chose not to tender a claim to James River (*supra* n. 5), and given that Axis and Canal's pre-litigation notices to James River would appear to have satisfied the tender obligation described in the Policy. The only issues left for resolution in this action are the amount of damages James River owes Axis and Canal, and whether Axis and Canal are entitled to their attorney fees for pursuing this case against James River.

**C.  Factual Disputes Prevent the Court from Resolving the Amount of James River's Liability to Axis and Canal.**

The parties' evidence regarding the amount of VFC's defense costs creates a dispute that a jury must resolve. No one disputes that, assuming James River is liable, it should pay one third of those costs. But the parties raise a host of disputes over the evidence that substantiates those costs.

---

[4] The court reviewed the principles of insurance policy interpretation in Washington in the March 13 order, and declines to repeat them here. Dkt. # 37 at 7-8.

ORDER – 11

Axis and Canal submit a declaration from VFC's counsel in the underlying litigation establishing just under $170,000 in invoices for attorney fees and related expenses. They ask for summary judgment that they are entitled to one third of that amount, or just over $56,000.

James River, however, argues that Axis and Canal failed to introduce most of those invoices during discovery, and also failed to establish that they paid the amount stated on the invoices. As to those invoices for which it has evidence, James River has evidence suggesting that the amount that Axis and Canal actually paid was slightly less than the invoiced amount. Finally, James River argues that it is entitled to subtract its Policy deductible of $10,000 from the final award, and that it should not pay prejudgment interest on any award.

For the most part, the court cannot resolve these disputes on summary judgment. As a matter of law, Axis and Canal are entitled to a portion of what they *paid* for VFC's defense, not what they were billed for the defense. The parties' factual disputes over those amounts are minor, but are sufficient to create a triable issue. Because the amount of liability and the time at which it was liquidated is in dispute, the court declines to address Axis/Canal's request for prejudgment interest at this time.

The parties have not developed the record sufficiently regarding alleged defects in discovery or the effect of James River's deductible. The parties can address those disputes in motions in limine. The court warns James River, however, that it should not expect the court to take the extreme step of striking defense costs invoices or other evidence because of any discovery violation. Barring evidence of incurable prejudice to James River arising from a discovery violation, the court will not prevent that evidence from reaching the jury.

ORDER – 12

**D. The Court Will Reserve Ruling On Axis/Canal's Request for Attorney Fees After They Submit a Proper Post-Judgment Motion.**

Although the court cannot yet enter judgment for Axis and Canal, they will ultimately prevail in this action if they pursue it to judgment. Assignees of an insured who sue to recover policy benefits can recover their attorney fees. *Estate of Jordan v. Hartford Accident & Indem. Co.*, 844 P.2d 403, 413 (Wash. 1993). James River's arguments to the contrary are primarily based on its erroneous belief that the alleged failure of VFC, Axis, and Canal to "tender" a claim is significant. James River raises two other arguments against the imposition of a fee award. It contends that Axis/Canal should not recover for fees expended in pursuit of their equitable contribution claim, and that they should not recover fees at all where they and VFC breached the Policy. Although the court reserves any ruling on attorney fees until a proper post-judgment motion, the court addresses each James River argument.

James River is mistaken if it believes that Axis/Canal cannot recover fees expended seeking equitable contribution. Axis and Canal might well be able to prevail on the claim, because the "selective tender" roadblock to equitable contribution may well not apply in this case for reasons the court has discussed. They have chosen instead to pursue breach of contract and subrogation claims, because *Mutual of Enumclaw* charts a direct route recovery on those claims. For that reason, any suggestion that their fees should be reduced for pursuit of an "unsuccessful" equitable contribution claim is suspect at best. Moreover, even if they had failed in pursuing an equitable contribution claim, there is no indication that the work necessary to pursue that claim differs substantially from the work necessary to pursue subrogation and breach of contract claims. Assuming that it does not, the court has no intention to decline to award fees for wholly successful litigation merely because of the labels Axis and Canal placed on their claims.

James River's reliance on cases in which courts have declined to award attorneys fees to insureds who breached their policies raises an interesting issue. In both cases, the

ORDER – 13

court declined to award attorney fees on behalf of an insured who had breached a clause requiring notice to the insurer before settling a claim. *PUD*, 881 P.2d at 1034-35; *Tripp v. Liberty Mut. Ins. Co.*, 25 P.3d 997, 1000 (Wash. 2001). No one breached a consent-before-settlement clause in the James River Policy, because no one is seeking payment from James River for any part of the settlement. Nonetheless, *PUD* and *Tripp* contain language that could be read more broadly. Axis and Canal, for reasons the court cannot fathom, did not address either case's bearing on their request for attorney fees. The court expects both parties to address these cases more carefully in the event that Axis/Canal moves for attorney fees after judgment.

### E. The Court Denies James River's Motion to Strike.

James River filed a surreply to Axis/Canal's summary judgment motion in which it moved to strike several phrases from Axis/Canal's reply brief along with evidence and arguments allegedly presented for the first time on reply. The court declines to strike any of the challenged phrases, which had no effect on the resolution of the motions before the court and are, at most, the sort of inflammatory accusation that James River has lobbed with equal fervor in this case. Axis/Canal's statement that James River neglected the attorney-client privilege by submitting various defense invoices from the underlying litigation is wrong, but so were many of the parties' statements in their briefing. The court is capable of ignoring them. The statement that James River took little discovery in this case is also of no import to the court, but need not be stricken. Finally, to the extent that Axis/Canal raised new arguments or evidence in their reply brief, the court's disposition of the motion permits James River to challenge that evidence and argument in a motion in limine. The court finds that no argument or evidence raised for the first time on reply affected its resolution of the motions before it.

### IV. CONCLUSION

Although this order does not resolve this dispute, the court strongly encourages the parties to resolve it. Barring wholly unforeseeable circumstances, James River will pay

ORDER – 14

one third of VFC's defense costs, and will pay Axis/Canal's attorney fees. It can continue to quibble over those amounts, but it seems likely that the additional attorneys fees for which it would be liable as a result of extending this dispute would exceed any reduction in the ultimate award. No one will benefit from extending this action. For that reason, the court directs the parties to meet and confer no later than July 21 to discuss settling this matter or at least resolving portions of it.

For the reasons stated above, the court DENIES James River's motion for summary judgment (Dkt. # 42), and GRANTS in part and DENIES in part Axis/Canal's summary judgment motion (Dkt. # 44). The parties are also directed to meet and confer as described in the previous paragraph. In accordance with the court's June 24 minute order (Dkt. # 57), the court orders the parties to submit motions any motions in limine no later than July 22, and to note them for July 31. Any opposition briefs will be due on July 29, and any replies on July 31. The parties shall submit a joint pretrial order in accordance with Local Rules W.D. Wash. CR 16.1 no later than July 31, along with proposed voir dire. The parties must file joint and disputed jury instructions in accordance with Local Rules W.D. Wash. CR 51 no later than noon on August 3, 2009. The court will hold a pretrial conference on August 3, 2009 at 4:00 p.m.

IT IS SO ORDERED.

DATED this 10th day of July, 2009.

The Honorable Richard A. Jones
United States District Judge

ORDER – 15